Slip Op. 11-101

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| ASSOCIATION OF AMERICAN SCHOOL PAPER SUPPLIERS, | : : : : | | |
| Plaintiff, | : : | | |
| v. | : : : | Before: Court No.: | WALLACH, Judge 09-00163 |
| UNITED STATES, | : : | | |
| Defendant, | : : : | | |
| and | : : | | |
| SHANGHAI LIAN LI PAPER PRODUCTS CO., LTD., | : : : | | |
| Defendant-Intervenor. | : : | | |

[Commerce's Final Results of Redetermination Pursuant to Court Remand are AFFIRMED.]

Dated: August 11, 2011

Wiley Rein LLP (Alan H. Price, Timothy C. Brightbill, and Maureen E. Thorson) for Plaintiff Association of American School Paper Suppliers.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael D. Panzera).

Dorsey & Whitney LLP (William E. Perry, Emily Lawson, and Elizabeth Crouse) for Defendant-Intervenor Shanghai Lian Li Paper Products Co., Ltd.

# **OPINION**

**Wallach, Judge:**

# **I**
# **INTRODUCTION**

This action for review follows a remand to the Department of Commerce ("Commerce") of its determination pursuant to the administrative review of the antidumping duty order covering certain lined paper products from the People's Republic of China ("PRC"). Certain Lined Paper Products from the People's Republic of China: Notice of Final Results of the Antidumping Duty Administrative Review, 74 Fed. Reg. 17,160 (April 14, 2009) ("Final Results"). The court has jurisdiction to entertain this action pursuant 28 U.S.C. § 1581(c).

Previously, the court upheld Commerce's determination in the Final Results except with regard to Commerce's "selection of information to calculate surrogate financial values." Ass'n of Am. Sch. Paper Suppliers v. United States, 716 F. Supp. 2d 1329, 1331 (CIT 2010) ("AASPS I"). The court held that this selection was unsupported by substantial evidence and remanded "for Commerce to revisit this determination." Id. at 1336.[1]

Plaintiff Association of American School Paper Suppliers ("AASPS" or "Plaintiff") continues to challenge Commerce's selection of information to calculate surrogate financial values. Association of American School Paper Suppliers' Comments on the Remand Results ("Plaintiff's Comments"), Doc. No. 108 at 1-2; see also Reply Brief to Defendant and Defendant-Intervenor's Response Briefs ("Plaintiff's Initial Reply"), Doc. No. 81 at 1-10; Amended Complaint, Doc. No. 70 ¶ 6. For the reasons stated below, Commerce's selection is supported by substantial evidence.

---

[1] For a more comprehensive overview of the underlying litigation, see AASPS I, 716 F. Supp. 2d 1329.

# II
# BACKGROUND

In September 2006, Commerce issued antidumping and countervailing duty orders on certain lined paper products from the People's Republic of China. Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Lined Paper Products from the People's Republic of China; Notice of Antidumping Duty Orders: Certain Lined Paper Products from India, Indonesia and the People's Republic of China; and Notice of Countervailing Duty Orders: Certain Lined Paper Products from India and Indonesia, 71 Fed. Reg. 56,949, 56,949 (September 28, 2006).  In October 2007, Commerce initiated the first administrative review of those orders for the period of review ("POR") from April 17, 2006 through August 31, 2007. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 72 Fed. Reg. 61,621, 61,621 (October 31, 2007).  Commerce selected Defendant-Intervenor Shanghai Lian Li Paper Products Co. Ltd. ("Defendant-Intervenor") as a mandatory respondent. Id.

During this review, Defendant-Intervenor submitted financial information for Sundaram Multi Pap Ltd. ("Sundaram data"),[2] an Indian paper producer. Lined Paper Products from China; Supplemental Section D Response of Shanghai Lian Li Paper Products Co., Ltd. (January 23, 2008), Public Document ("P.D.") 45;[3] Letter from Garvey Schubert Barer to Carlos Gutierrez, Secretary of Commerce, Re: Certain Lined Paper Products from China; Submission of Surrogate Value Information (April 1, 2008), P.D. 63 at 5.  AASPS submitted financial information for

---

[2] The Sundaram data contained financial information for Sundaram Multi Pap Ltd. for the years 2003-2007; this financial information was gathered from two secondary sources and not directly from Sundaram Multi Pap Ltd. Letter from Garvey Schubert Barer to Carlos Gutierrez, Secretary of Commerce, Re: Certain Lined Paper Products from China; Submission of Surrogate Value Information (April 1, 2008), Public Document ("P.D.") 63 at 5; Remand Redetermination at 23-25.

[3] Public Document ("P.D.") and Confidential Document ("C.D.") citations refer to the administrative record filed in Plaintiff's original challenge to the Final Results, not the record filed by Commerce concurrent with the Remand Results. Public Document on Remand ("P.D.R.") citations refer to the administrative record filed by Commerce concurrent with the Remand Results.

Navneet Publications ("Navneet data"), another Indian paper producer. Letter from Wiley Rein LLP to Carlos M. Gutierrez, Secretary of Commerce, Re: Certain Lined Paper Products from China, First Antidumping Duty Administrative Review: Comments on the Valuation of Factor Inputs (April 8, 2008), Confidential Document ("C.D.") 16 at 7.[4]

Commerce determined for the reasons stated below, see infra at n.5 and n.7, that the Sundaram data were the "best available information" to calculate surrogate financial values and declined to use the Navneet data for this purpose. Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Acting Assistant Secretary for Import Administration, Issues and Decisions for the Final Results of the First Administrative Review (April 6, 2009), P.D. 117 ("Final Results Memorandum") at cmt. 4; see also AASPS I, 716 F. Supp. 2d at 1333, 1335; Certain Lined Paper Products from the People's Republic of China: Notice of Preliminary Results of the Antidumping Duty Administrative Review, 73 Fed. Reg. 58,540, 58,547 (October 7, 2008) ("Preliminary Results").

In AASPS I, AASPS argued, inter alia, "that substantial evidence supports neither (1) Commerce's selection of the Sundaram [data] for the purpose of calculating surrogate financial values nor (2) Commerce's rejection of the Navneet [data]." AASPS I, 716 F. Supp. 2d at 1334

---

[4] In antidumping duty proceedings concerning merchandise from the PRC, Commerce determines the normal value of that merchandise through an approach specific to non-market economy countries. See 19 U.S.C. § 1677b(c); 19 C.F.R. § 351.408; Department of Commerce, Antidumping Manual (October 13, 2009), Chap. 10; AASPS I, 716 F. Supp. 2d at 1333, 1335; Certain Lined Paper Products from the People's Republic of China: Notice of Preliminary Results of the Antidumping Duty Administrative Review, 73 Fed. Reg. 58,540, 58,542 (October 7, 2008) ("Preliminary Results").  This approach uses surrogate data from a comparable market economy country to value the factors of production ("FOP") (including materials, labor, and energy) and other costs of production ("non-FOP costs of production") (including factory overhead; selling, general, and administrative expenses; and profit) for the merchandise. Department of Commerce, Antidumping Manual (October 13, 2009), Chap. 10 at 14-18; see also 19 CFR § 351.408(c)(4).  In valuing non-FOP costs of production, Commerce calculates surrogate financial values using the publicly available financial statements of a producer of comparable merchandise from the surrogate country. 19 CFR § 351.408(c)(4).  For the instant review, Commerce chose India as the surrogate country, because India is a market economy country that (1) is "at a level of economic development comparable to that of" the PRC and (2) is a significant producer of comparable merchandise. Preliminary Results, 73 Fed. Reg. at 58,542.

3

(internal citations omitted) (citing Plaintiff's Initial Reply at 6-7, 20); see also Amended Complaint at ¶ 6. The court agreed, holding, inter alia, that "Commerce failed to articulate a rational connection between the evidence on the record and its selection of the Sundaram [data]." AASPS I, 716 F. Supp. 2d at 1335. Because "Commerce's determination that the Sundaram [data] is the best available information for calculation of surrogate financial values [was] unsupported by substantial evidence[,] [t]his matter [was] remanded for Commerce to revisit this determination." Id. at 1336.

In December 2010, Commerce issued its Final Results of Redetermination Pursuant to Remand, Doc. No. 105 ("Remand Redetermination"). Remand Redetermination at 1. Commerce "consider[ed] specificity, contemporaneity, and the quality of available data" to determine what constitutes best available information. Id. at 24. Commerce again concluded that the Sundaram data "constitutes the best available information on the record" because "Sundaram is a producer of stationery products; its financial information is contemporaneous with the POR; and the data are sufficiently complete and accurate for the purpose of calculating surrogate financial ratios" and because "there is no evidence that Sundaram received [potentially distorting] countervailable subsidies." Id. at 14.[5]

In examining the accuracy of the Sundaram data, Commerce compared the data in the official 2004-2005 Sundaram annual financial report submitted by Plaintiff to "the data for year end March 2005" in the Sundaram data submitted by Defendant-Intervenor. Remand Redetermination at 26; Memorandum from Christopher Hargett, International Trade Compliance Analyst, and Michael Martin, Lead Accountant, to The File, Re: Sundaram Balance Sheet

---

[5] Commerce continued to rely on the same reasoning for favoring the Sundaram data in its Remand Redetermination as it did in the Final Results. Final Results Memorandum at cmt. 4 ("The Department continues to find that Sundaram's information represents the best available information on the record. We continue to find that Sundaram's financial statement is complete, publicly available and contemporaneous with the POR."); see also Preliminary Results, 73 Fed. Reg. at 58,547.

4

Analysis (December 6, 2010), Public Document on Remand ("P.D.R.") 13 ("Balance Sheet Analysis") at 2.[6] Using this comparison, Commerce concluded that the submitted Sundaram data were "an accurate representation" of the official 2006-2007 Sundaram annual financial report. Remand Redetermination at 26; see also Balance Sheet Analysis at 3 ("Thus, the accuracy and completeness of 2007 Sundaram balance sheet and profit and loss account provided by Lian Li, which includes the 2005 financial information, is corroborated by AASPS' own submission of Sundaram's 2005 balance sheet and profit and loss account.").

In contrast to the Final Results,[7] Commerce concluded that the Navneet data were "less representative" due to Navneet's receipt of countervailable subsidies and different level of integration. Remand Redetermination at 26-27. Therefore, Commerce "continue[d] to reject the use of [the Navneet data] for the purposes of calculating surrogate financial ratios." Id. at 19.

In this action, AASPS continues to challenge Commerce's selection of the Sundaram data as the best available information and Commerce's decision not to use the Navneet data. Plaintiff's Comments at 1-2.

---

[6] It appears that Commerce did not have a copy of the official 2006-2007 Sundaram annual financial report on the record. A copy of the official 2004-2005 Sundaram annual financial report was submitted to Commerce by AASPS during remand proceedings, following Commerce's request. Remand Redetermination at 24; Letter from Wiley Rein LLP to Gary F. Locke, Secretary of Commerce, Re: Certain Lined Paper Products from the People's Republic of China: Submission of 2004-2005 Annual Report of Sundaram Multi Pap Ltd. (November 9, 2010) P.D.R. 10 at 1-2; Letter from James Terpstra, Program Manager, to Wiley Rein LLP, Re: Remand Redetermination, Association of American School Paper Suppliers v. United States, Court No. 09-00163, Request for Submission of Factual Information Referenced in the Association of American School Paper Suppliers' October 19, 2010 Comments on the Department of Commerce's Draft Results of Remand Redetermination (November 5, 2010), P.D.R. 8.

[7] In declining to use the Navneet data in the Remand Redetermination, Commerce changed its reasoning from its position in the Final Results. Compare Final Results Memorandum at 39 cmt. 4, cited in AASPS I, 716 F. Supp. 2d at 1335 ("Commerce stated that (1) during an earlier investigation, it had determined that the Navneet data [were] inaccurate and (2) nothing in the record contradicts that determination.") with Remand Redetermination at 13 ("We have revisited this conclusion and have not relied upon it as a basis for rejecting Navneet's financial information.").

## III
## STANDARD OF REVIEW

The court will hold unlawful a determination by Commerce resulting from an administrative review of an antidumping duty order if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); see 19 U.S.C. § 1516a(a)(2)(B)(iii).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Aimcor v. United States, 154 F.3d 1375, 1378 (Fed. Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).

This inquiry must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). While contradictory evidence is considered, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487–88, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).

**IV**
**DISCUSSION**

Commerce's selection of the Sundaram data as the "best available information" from which to calculate surrogate values is supported by substantial evidence. Commerce rationally concluded that the Sundaram data are "not so incomplete as to warrant rejection," Remand Redetermination at 26; see infra Part IV.B, and that the Sundaram data are reliable, see infra Part IV.C. These conclusions are reasonable, in part, because AASPS has not demonstrated that Commerce has a consistent past practice of "reject[ing] financial statements where any information is missing, regardless of its nature," Plaintiff's Comments at 12. See infra Part IV.D.[8]

**A**
**Legal Framework**

19 U.S.C. § 1677b(c)(1)(B) requires Commerce to calculate surrogate financial values "based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by [Commerce]." 19 U.S.C. § 1677b(c)(1)(B). "The statute provides little guidance as to what constitutes best available information," Globe Metallurgical, Inc. v. United States, 28 CIT 1608, 1621, 350 F. Supp. 2d 1159 (2004) (citing Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999)), and "Congress has vested Commerce with considerable discretion in selecting the 'best available information.'" Allied Pacific Food (Dalian) Co. v. United States, 587 F. Supp. 2d 1330, 1342 (CIT 2008) (same). However, Commerce's selection must still be supported by substantial evidence on the record and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[8] Because Commerce's selection of the Sundaram data was within its discretion, see infra Part IV, AASPS' arguments concerning selection of the Navneet data and reopening the administrative record, Association of American School Paper Suppliers' Reply Comments on the Remand Results ("Plaintiff's Reply"), Doc. No. 118 at 14, are moot.

7

**B**
**Substantial Evidence Supports Commerce's Conclusion That The Sundaram Data Were Sufficiently Complete**

AASPS argues that Commerce "has not explained its determination that the [Sundaram] data are sufficiently complete to enable the agency to accurately calculate surrogate financial ratios." Plaintiff's Comments at 19.  AASPS states that "the [Sundaram] data does not represent Sundaram's complete annual report or financial statement" because the information "is missing data required under Indian law" and missing "numerous schedules" that are present in the official 2004-2005 Sundaram annual financial report. Association of American School Paper Suppliers' Reply Comments on the Remand Results ("Plaintiff's Reply"), Doc. No. 118 at 9.  AASPS focuses on the "lack [of] any schedules or breakouts for line items on the balance sheet or profit and loss statement" and states that Commerce "has previously rejected financial statements that do not contain such schedules." Id. at 10.  The lack of these schedules or breakouts, according to AASPS, "frustrates the agency's ability to perform any analysis" of some of the elements of the surrogate financial ratio calculations. Id.  AASPS argues that "[s]imply describing the missing schedules as non-vital does not provide the required explanation." Id. at 11.

The Government argues that "the record demonstrates that the Sundaram [data] was not defective in a way that would warrant rejection of information as incomplete." Defendant's Response to Plaintiff's Comments Regarding the Remand Redetermination ("Defendant's Response"), Doc. No. 115 at 15 (internal quotations omitted).  Commerce explained that its "primary concern is whether the financial statements contain usable data." Remand Redetermination at 11.  It found that the Sundaram data contained a director's report, auditor's reports, balance sheet, profit and loss statement, notes, and accounting policies. Id.  Commerce stated that these are "elements which are common to many financial reports." Id.  Commerce

8

also stated that "the details of operating expense and overhead can be presented differently for [each] different company's financial information" and that "the accounts which are required to calculate surrogate values were included in the Sundaram [data]." Id. at 13. Commerce concluded that the Sundaram data were "sufficiently complete . . . for the purpose of calculating surrogate financial ratios." Id. at 14.

AASPS fails to offer any evidence that Commerce acted beyond the scope of its discretion or that Commerce's methodology compromised its calculations. See generally Plaintiff's Comments; Plaintiff's Reply. Commerce here sufficiently explained its conclusion that the Sundaram data "contained all the data [it] needed to calculate financial ratios," Remand Redetermination at 11.[9]

## C
## Substantial Evidence Supports Commerce's Conclusion That The Sundaram Data Were Reliable

AASPS also challenges Commerce's conclusion that the Sundaram data are an accurate representation of the official Sundaram annual financial report. Plaintiff's Comments at 16. AASPS argues that "there is no reason why" matching 2004-2005 values with official documentation should necessarily mean that the 2006-2007 values are consistent as well, id. at 17-18, and that "this finding is pure speculation," Plaintiff's Reply at 8.

The Government argues that Commerce's comparison, inter alia, "provide[s] substantial evidence to support Commerce's determination that the information reflects the official annual report of Sundaram for the current period." Defendant's Response at 21. Defendant-Intervenor adds that this comparison was logical because "if the data given for the year ended March 2005

---

[9] AASPS argues that "any incomplete statement must be rejected. The lack of schedules is therefore an indicia of incompleteness that warrants rejection." Plaintiff's Reply at 11. To the extent that AASPS' argument rests on its theory of Commerce's past practice, this argument is also rejected. See infra Part IV.D.

9

is accurate, the data for other years listed is also likely to be accurate." Response to Comments on Final Results of Redetermination Pursuant to Court Order ("Defendant-Intervenor's Response"), Doc. No. 116 at 13.

It may be true that, as AASPS points out, "it does not follow" that because the 2004-2005 Sundaram data were accurate, the 2006-2007 data "<u>must</u> also accurately reflect the values recorded in Sundaram's 2006-2007 financial statement." Plaintiff's Reply at 8 (emphasis added).[10] Nevertheless, it is within Commerce's discretion to conclude the data do accurately reflect those values, as long as it provides substantial evidence for its conclusion. 19 U.S.C. § 1516a(b)(1)(B)(i).

Here, Commerce provided such evidence. Commerce compared 2004-2005 values in the Sundaram data, which covered years 2003 to 2007, to the official 2004-2005 Sundaram annual financial statement. Remand Redetermination at 26; Balance Sheet Analysis at 2. Commerce found that, for the 2004-2005 values, "[a]ny differences between the values in the two reports were less than 0.1 percent," Remand Redetermination at 26, and "attributable to rounding," Balance Sheet Analysis at 3. AASPS does not dispute these findings. <u>See generally</u> Plaintiff's Comments at 16-19; Plaintiff's Reply at 7-9. Commerce then determined that the 2006-2007 values contained in the Sundaram data were "an accurate representation" of the official 2006-2007 Sundaram annual financial report. Remand Redetermination at 26; <u>see also</u> Balance Sheet

---

[10] Plaintiff's counsel stated at oral argument that Plaintiff "do[es no]t dispute" the accuracy of the 2004-2005 Sundaram data. August 4, 2011 Oral Argument at 10:59:00-10:59:13.

Analysis at 3 (concluding that the official 2004-2005 Sundaram annual financial report corroborated the accuracy of the Sundaram data).[11]

### D
### AASPS Has Failed To Show That Commerce Has Consistently Rejected Statements Where Any Information Is Missing

AASPS contends that Commerce's "past practice is to reject financial statements where <u>any</u> information is missing, regardless of its nature." Plaintiff's Comments at 12.[12] AASPS argues that Commerce's use of the Sundaram data "is a clear deviation from past practice which [Commerce] has not explained." Plaintiff's Reply at 2.

The Government counters that "AASPS's argument distorts Commerce's practice with respect to incomplete statements," Defendant's Response at 11, pointing to Commerce's description of its past practice as rejecting incomplete financial statements in cases "where alternative information was on the record and the missing information was determined to be <u>vitally important</u>." Defendant's Response at 10 (quoting Remand Redetermination at 26) (emphasis added). The Government argues Commerce has an alternative past practice not correctly articulated by AASPS that is consistent with Commerce's actions in this case. Defendant's Response at 11-13; <u>see</u> Remand Redetermination at 26-27.

"A court may measure Commerce's reasonableness by determining whether Commerce's actions are consistent with a past practice or stated policy." <u>Globe Metallurgical</u>, 28 CIT at 1621 (citing <u>Hebei Metals & Minerals Imp. & Exp. Corp. v. United States</u>, 28 CIT 1185, 1199

---

[11] AASPS also argues that Commerce's conclusion that "Navneet was subsidized during the [POR]" was based on a type of information present in the Navneet data but not present in the Sundaram data, Plaintiff's Reply at 10 n.7, and further asserts that the Sundaram data nonetheless "indicates that Sundaram received 'export incentives' during the review period," id. at 14. Yet, even if Sundaram received actionable subsidies, the parties agree that receipt of subsidies is not by itself enough to reject a financial statement. Remand Redetermination at 17; Plaintiff's Reply at 14. Additionally, AASPS does not contest Commerce's finding that Navneet has a different level of integration. See generally Plaintiff's Comments at 21-23; Plaintiff's Reply at 13-15.

[12] AASPS points to Commerce's various instances of rejecting financial statements when missing certain information. Plaintiff's Comments at 8-10.

(2004)); see also NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1331 (Fed. Cir. 2009); Defendant's Response at 14; Plaintiff's Reply at 3.[13]

When assessing Commerce's past practice, "the proper mode of analysis requires comparison of Commerce's actions before this case with Commerce's actions in this case." Consol. Bearings Co. v. United States, 348 F.3d 997, 1007 (Fed. Cir. 2003) (applying the arbitrary and capricious standard). In addition, Commerce's "policy statements may help identify Commerce's consistent past practice." Id. Plaintiff has the burden of showing "that Commerce consistently followed a contrary practice in similar circumstances." Id.; see also Andaman Seafood Co., Ltd. v. United States, 768 F. Supp. 2d 1315, 1326 (CIT 2011) (holding that the plaintiffs failed to show that Commerce had an established practice of relying on indirect selling expense ratios).

Here, AASPS has not proven that Commerce consistently followed a practice of "reject[ing] financial statements where any information is missing, regardless of its nature," Plaintiff's Comments at 12.

---

[13] Commerce has "discretion to . . . adapt its views and practices to the particular circumstances of the case at hand, so long as the agency's decisions are explained and supported by substantial evidence on the record." Pakfood Pub. Co. v. United States, 724 F. Supp. 2d 1327 (CIT 2010) (quoting Nakornthai Strip Mill Pub. Co. v. United States, 587 F. Supp. 2d 1303, 1307 (2008)).

On one hand, AASPS is correct that Commerce has, at times, described its practice merely as rejecting incomplete statements, without qualification.[14] Commerce has also

---

[14] Memorandum from Susan H. Kuhbach, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Deputy Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Seamless Refined Copper Pipe and Tube from the People's Republic of China (September 24, 2010) ("Seamless Refined Copper Pipe and Tube"), cited in Seamless Refined Copper Pipe and Tube From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 75 Fed. Reg. 60,725, 60,726 (October 1, 2010), at 10 cmt. 2 ("established practice of rejecting incomplete financial statements"); Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Deputy Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Antidumping Duty Investigation of Wire Decking from the People's Republic of China: Final Antidumping Duty Determination (June 3, 2010) ("Wire Decking"), cited in Wire Decking from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 75 Fed. Reg. 32,905, 32,906 (June 10, 2010), at 15 cmt. 2 ("practice to not use incomplete or illegible statements"); Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Deputy Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Polyethylene Retail Carrier Bags from the People's Republic of China for the Period of Review August 1, 2006, through July 31, 2007 (February 4, 2009) ("Polyethylene Retail Carrier Bags"), cited in Polyethylene Retail Carrier Bags from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 74 Fed. Reg. 6,857, 6,858 (February 11, 2009), at 9 cmt. 2 ("long-standing practice of not using the financial statements of surrogate producers whose financial statements are incomplete"); Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Antidumping Duty Investigation of Lightweight Thermal Paper from the People's Republic of China: Issues and Decision Memorandum ("Lightweight Thermal Paper"), cited in Lightweight Thermal Paper From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 73 Fed. Reg. 57,329, 57,329-30 (October 2, 2008), at 13 cmt. 2 ("practice not to use incomplete or illegible statements"); Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Antidumping Investigation of Certain New Pneumatic Off-the-Road Tires from the People's Republic of China (July 7, 2008) ("Certain New Pneumatic Off-the-Road Tires"), cited in Certain New Pneumatic Off-The-Road Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73 Fed. Reg. 40,485, 40,486 (July 15, 2008), at 37 cmt. 17.A ("practice not to use incomplete or illegible statements"); Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the 2005-2006 Administrative Review of Folding Metal Tables and Chairs from the People's Republic of China (December 7, 2007) ("Folding Metal Tables and Chairs"), cited in Folding Metal Tables and Chairs from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 72 Fed. Reg. 71,355, 71,356 (December 17, 2007), at 10 cmt. 1 ("long-standing policy to reject financial statements that are incomplete"); Memorandum from Barbara E. Tillman, Acting Deputy Assistant Secretary for Import Administration, to Joseph A. Spetrini, Acting Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Final Results and Final Partial Rescission of Certain Cut-To-Length Carbon Steel Plate from Romania (March 7, 2005) ("Cut-To-Length Carbon Steel Plate"), cited in Certain Cut-to-Length Carbon Steel Plate from Romania: Notice of Final Results and Final Partial Rescission of Antidumping Duty Administrative Review, 70 Fed. Reg. 12,651, 12,652-53 (March 15, 2005), at 23 cmt. 10 ("preference for using financial statements, which are audited and complete, compared to financial statements which are not audited and incomplete").

previously rejected incomplete financial statements without discussing the significance of the missing data.[15]

However, Commerce is correct that it has also previously described its policy as rejecting incomplete statements that are missing critical information.[16] Commerce has often explicitly focused on the importance of the missing information when rejecting incomplete financial statements.[17] Commerce has also previously indicated that incompleteness alone may not be sufficient to reject statements and that it has in the past relied upon incomplete financial

---

[15] Seamless Refined Copper Pipe and Tube at 10 cmt. 2 (rejecting financial statement missing income statement); Wire Decking at cmt. 2 (rejecting financial statement missing schedules A through D); Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review and New Shipper Review of Wooden Bedroom Furniture from the People's Republic of China (August 11, 2008) ("Wooden Bedroom Furniture II"), cited in Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Review, 73 Fed. Reg. 49,162, 49,162 (August 20, 2008), at 14 cmt. 1 (rejecting financial statements that were missing listed items).

[16] Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the New Shipper Reviews of Wooden Bedroom Furniture from the People's Republic of China covering the period June 24, 2004 through June 30, 2005 (November 21, 2006) ("Wooden Bedroom Furniture I"), cited in Wooden Bedroom Furniture from the People's Republic of China: Final Results of the 2004-2005 Semi-Annual New Shipper Reviews, 71 Fed. Reg. 70,739, 70,740 (December 6, 2006), at 6 cmt. 2 ("It is [our] practice to disregard incomplete financial statements as a basis for calculating surrogate financial ratios where . . . the statement is missing key sections, such as sections of the auditor's report, that are vital to our analysis and calculations.").

[17] Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Deputy Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Final Results of 1st New Shipper Review: Certain Steel Nails from the People's Republic of China ("PRC") (June 10, 2010) ("Certain Steel Nails"), cited in Certain Steel Nails from the People's Republic of China: Final Results of the First New Shipper Review, 75 Fed. Reg. 34,424, 34,426 (June 17, 2010), at 15 cmt. 4 ("[T]he following financial statements are incomplete because they lack certain critical components . . . ."); Polyethylene Retail Carrier Bags at 9 cmt. 2 ("Such information is critical for determining not only whether Polyplast's income comes primarily from its manufacturing operations but also for determining whether Polyplast is a producer of identical merchandise."); Memorandum from Bernard T. Carreau, Deputy Assistant Secretary for Import Administration, Group II, to Faryar Shirzad, Assistant Secretary for Import Administration Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Steel Concrete Reinforcing Bars from Belarus (June 14, 2001) ("Steel Concrete Reinforcing Bars"), cited in Notice of Final Determination of Sales at Less Than Fair Value: Steel Concrete Reinforcing Bars From Belarus, 66 Fed. Reg. 33,528, 33,529 (June 22, 2001), at 7 cmt. 2 ("[W]e are concerned that the statement is missing key sections, such as sections of the auditor's report, that are vital to our analysis and calculations.").

statements.[18] Moreover, in other determinations, Commerce has "not reject[ed] the financial information <u>solely</u> for being incomplete.[19] Defendant's Response at 16 (emphasis modified).

Indeed, as pointed out by counsel for Defendant-Intervenor in oral argument, Commerce recently stated clearly that its practice is to only reject incomplete statements when those statements are missing "key sections" that are "vital." August 4, 2011 Oral Argument at 11:11:33-11:12:08 ("Although, Petitioners argued that the Visakha statement appears to be incomplete the Department notes that it is our practice to only disregard incomplete financial statements as a basis for calculating surrogate financial ratios where the statement is missing key

---

[18] Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Final Results in the Second Administrative Review of Floor-standing, Metal-top Ironing Tables and Certain Parts Thereof from the People's Republic of China (March 10, 2008) ("Floor-standing, Metal-top Ironing Tables and Certain Parts Thereof"), <u>cited in</u> Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. 14,437, 14,437-38 (March 18, 2008), at 8 cmt. 1 ("[T]he lack of the [profit and loss] statement from the financial report may not always invalidate the financial statement as a potential surrogate source if no more reliable options are available."), 8 cmt. 1 ("We note that petitioner is correct that in other reviews, the Department has occasionally relied upon incomplete financial statements to derive surrogate financial ratios. However, the Act requires the Department to determine the surrogate financial ratios based on the best available information on the record. <u>See</u> section 773(c)(1) of the Act. Thus, the Department evaluates the best available surrogate information on a case by case basis, and in each case, the Department must evaluate among the surrogate value sources placed on the record to determine which constitutes the most comparable, and accurate information. Thus, the lack of the P&L statement from the financial report may not always invalidate the financial statement as a potential surrogate source if no more reliable options are available. In this case, however, the Department finds, for the reasons discussed above, that in comparing the 2005-2006 Infiniti Modules with the more complete 2004-2005 Infiniti Modules financial statements, the 2004-2005 Infiniti Modules financial statements are wholly publicly available and thus more reliable and complete.").

[19] Floor-standing, Metal-top Ironing Tables and Certain Parts Thereof at 7 n.13 cmt. 1 ("[A missing] [profit and loss] statement raises concerns that items listed on the [profit and loss] statement which may be relevant to the surrogate financial ratio calculation are not listed in the publicly available schedules."); Certain Lined Paper Products at 10 cmt. 1 ("[The f]inancial statements are illegible and undecipherable. Furthermore, the financial statements do not appear to be a complete report . . . ."); Cut-To-Length Carbon Steel Plate at 23 cmt. 10 (discussing five reasons for rejection, including incompleteness); Silicon Metal at 27 cmt. 9 ("[W]e are disregarding all Sinai Manganese financial data as either having a negative profit or incomplete and not contemporaneous financial data."); Steel Concrete Reinforcing Bars at 7 cmt. 2 ("insolvent company with an aberrational [selling, general, and administrative] expense ratio" and an incomplete statement); Memorandum from Joseph A. Spetrini, Deputy Assistant Secretary for Import Administration, to Faryar Shirzad, Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Less Than Fair Value Investigation of Silicon Metal from the Russian Federation (February 3, 2003) ("Silicon Metal"), <u>cited in</u> Notice of Final Determination of Sales at Less Than Fair Value: Silicon Metal From the Russian Federation, 68 Fed. Reg. 6,885, 6,886-87 (February 11, 2003), at 26-28 cmt. 9 ("The 1995-1998 Sinai Manganese financial data may be incomplete, and moreover is not contemporaneous with the [period of investigation]. Thus, we are disregarding all Sinai Manganese financial data as either having a negative profit or incomplete and not contemporaneous financial data.").

15

sections, such as sections of the auditor's report, that are vital to our analysis and calculations.") (quoting Galvanized Steel Wire From the People's Republic of China and Mexico: Initiation of Antidumping Duty Investigations, 76 Fed. Reg. 23,548, 23,551 (April 27, 2011)).

AASPS has not proven that Commerce has consistently "reject[ed] financial statements where any information is missing, regardless of its nature," Plaintiff's Comments at 12. AASPS cites many of the Commerce decisions referenced above, see supra nn. 14-20, as supporting its proposition that Commerce "has uniformly rejected financial statements that are incomplete, whether by reason of missing notes, schedules, pages or even certain figures," Plaintiff's Reply at 4. See Plaintiff's Comments at 8-9 n.5. However, the Government correctly counters that "Commerce did [not] somehow develop[] a policy of [always] rejecting . . . incomplete information without inquiring into whether calculations would be feasible notwithstanding the incompleteness" simply by not "fully explaining in every case its reasoning for rejecting information as incomplete." Defendant's Response at 14 (internal quotation marks omitted).

# V
# CONCLUSION

For the reasons stated above, Commerce's Final Results of Redetermination Pursuant to Remand are AFFIRMED.

               __/s/ Evan J. Wallach____
               Evan J. Wallach, Judge

Dated: August 11, 2011
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASSOCIATION OF AMERICAN SCHOOL PAPER SUPPLIERS, : : : Plaintiff, : : v. : : UNITED STATES, : : Defendant, : : and : : SHANGHAI LIAN LI PAPER PRODUCTS CO., LTD., : : Defendant-Intervenor. : | Before: WALLACH, Judge Court No.: 09-00163 |

## **ORDER AND JUDGMENT**

This case having come before the court upon the Final Results of Redetermination Pursuant to Court Remand ("Remand Results") filed by the U.S. Department of Commerce ("Commerce"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and, after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED that Commerce's Remand Results are AFFIRMED.

                                            __/s/ Evan J. Wallach____
                                            Evan J. Wallach, Judge

Dated: August 11, 2011
       New York, New York